IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WHEATON THEATRE, LLC, | )<br>) |
| Plaintiff, | )<br>) |
| | ) No. 18 C 5248 |
| v. | )<br>) Hon. Virginia M. Kendall |
| FIRST AMERICAN TITLE INSURANCE COMPANY, | )<br>)<br>) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Wheaton Theatre, LLC brought this action in the Circuit Court of DuPage County against Defendant First American Title Insurance Co. seeking damages and a declaratory judgment in connection with Wheaton Theatre's purchase of certain real estate. Specifically, Wheaton Theatre brings claims for declaratory judgment (Count I), breach of contract (Count II), and negligent misrepresentation (Count III). *See* (Dkt. 1-2). First American removed the action to this Court (Dkts. 1, 26) and now moves to dismiss Count III pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 16). For the reasons stated below, First American's Motion is granted.

## BACKGROUND

The following facts are taken from Wheaton Theatre's Complaint and are presumed true for the purpose of reviewing the motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).

Wheaton Theatre is an Illinois limited liability company. (Dkt. 1-2) at ¶ 1. It has one member: James Atten. (Dkt. 26) at ¶ 11. Atten is a citizen of Illinois. Id. at ¶ 12. First American is a Nebraska insurance company with its principal place of business in California. (Dkt. 1) at ¶ 9; see also (Dkt. 26) at ¶¶ 13–16.

1

On or about November 30, 2012, Wheaton Theatre acquired title to the real estate known as 119–127 North Hale Street, Wheaton, Illinois 60187 (the "Premises"). (Dkt. 1-2) at ¶ 4. First American issued Wheaton Theatre a marked title commitment at closing, followed by Insurance Policy Number 2306396 (the "Policy") on December 10, 2012. *Id.* at ¶ 5. The clean and marked title commitment are attached to Wheaton Theatre's response as Exhibits C and D. *See* (Dkt. 19-1) at Ex. C & D. The Policy is attached to the Complaint as Exhibit A. *See* (Dkt. 1-2) at Ex. A.

Sometime around November 7, 2013, Wheaton Theatre received a notice from the Wheaton Sanitary District indicating that unpaid sanitary district liens remained against the title stemming from a lien by the Sanitary District that was recorded on June 28, 2010, which First American failed to include in the title commitment or Policy. *Id.* at ¶¶ 6–7. Wheaton Theatre tendered the Sanitary District liens to First American in December 2013, and the parties began to work to clear the liens (although not without issue). *Id.* at ¶¶ 8–13. Ultimately, Wheaton Theatre incurred attorneys' fees over the next few months in working to clear the liens and avoid water shut offs. *Id.* at ¶ 13.

During this time, Wheaton Theatre asked its counsel to research the correct legal description of the Premises. *Id.* at ¶ 14. Wheaton Theatre's attorney discovered in July 2014, and concluded in September 2014, that a portion of the Premises (the "Disputed Property") had been dedicated to the City of Wheaton on or about February 2, 1948 and improperly included as part of the insured Premises under the Policy. *Id.* at ¶¶ 16, 18. Wheaton Theatre sent First American a demand letter tendering a claim for damages regarding the Disputed Property in November 2014. *Id.* at ¶ 19. In May 2015, First American offered to settle the title claim for $20,500. *Id.* at ¶ 21. More than one year later, in October 2016, Wheaton Theatre made a written policy demand, which First American rejected in November 2016. *Id.* at ¶¶ 22–23. More than one year later, in January

2018, Wheaton Theatre made a reduced demand of $120,000. *Id.* at ¶ 24. First American again rejected the demand, making a counteroffer of $20,500. *Id.* at ¶ 25.

Accordingly, Wheaton Theatre brought suit (1) seeking a declaration that First American is obligated to pay attorneys' fees incurred by Wheaton Theatre as a result of the Sanitary District lien and prior conveyance of the Disputed Property (Count I), (2) claiming that First American breached the Policy by (a) failing to timely resolve the Sanitary District liens and denying Wheaton Theatre's demand for the attorneys' fees it incurred in resolving those liens and (b) including the Disputed Property as insured under the Policy (Count II), and (3) claiming that First American negligently misrepresented the Sanitary District liens and Disputed Property issue by failing to accurately address these items in the title commitment and Policy—by omitting the Sanitary District liens and including the Disputed Property in the legal description (Count III). First American moves to dismiss Count III. (Dkt. 16).

## LEGAL STANDARD

A Rule 12(b)(6) motion challenges the legal sufficiency of the complaint. To survive a motion to dismiss under Rule 12(b)(6), the Court "'accept[s] as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff.'" *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017) (quoting *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016)). To survive a motion to dismiss, a plaintiff's complaint must allege facts which, when taken as true, "'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Ill. State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007)). While specific facts are unnecessary, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662,

3

678 (2009). The Court reads the complaint and assesses its plausibility as a whole. *See Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011). For both a 12(b)(6) motion, the Court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," as well as "additional facts set forth in [plaintiff's] district court brief . . . so long as those facts are consistent with the pleadings." *See Matthews v. Hughes*, 2015 WL 5876567, at *1 (N.D. Ill. Oct. 5, 2015) (citing *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013)) (internal alterations and quotation marks omitted).

## ANALYSIS

Illinois law applies to this diversity action. *See Blood v. VH-1 Music First*, 668 F.3d 543, 546 (7th Cir. 2012). Count III of the Complaint alleges that First American, who was in the business of supplying information, falsely, carelessly and negligently misrepresented in their title commitment and Policy that Wheaton Theatre held free and clear title to 119–127 North Hale Street. To state a claim for negligent misrepresentation under Illinois law, a plaintiff must establish: (1) a false statement of material fact, (2) carelessness or negligence in ascertaining the truth of the statement by the party making it, (3) an intention to induce the other party to act, (4) action by the other party in reliance on the truth of the statement, (5) damage to the other party resulting from such reliance, and (6) a duty on the party making the statement to communicate accurate information. *First Midwest Bank, N.A. v. Stewart Title Guaranty Co.*, 218 Ill. 2d 326, 334–35 (2006).

Here, relying on the false information in the title commitment and Property, Wheaton Theatre, unaware of the Sanitary District liens and the erroneous inclusion of the Disputed Property, made a business decision to purchase the property as described in the commitment. (Dkt.

1-2) at ¶¶ 44, 46. On this point, Wheaton Theatre alleges that it was foreseeable that Wheaton Theatre might need the Disputed Property to realize the full development potential of its purchase. *Id.* at ¶ 45. That is, the information about the liens and the Disputed Property were material facts. *Id.* at ¶ 47. In getting these matters of public record wrong in the commitment and Policy, Wheaton Theatre alleges that First American acted negligently and caused damage to it. *Id.* at ¶ 48. Thus, in Count III, Wheaton Theatre seeks to recover losses from the inability to use the Disputed Property and work to resolve the liens on a tort concept. In moving to dismiss Count III, First American does not argue that the Complaint fails to sufficiently allege the elements of negligent misrepresentation. Instead, First American argues that Wheaton Theatre cannot maintain such a claim against it under Illinois law. (Dkt. 13) at 2–3.

Generally, under *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill. 2d 69 (1982), plaintiffs cannot recover for solely economic loss under tort theories of strict liability, negligence, and innocent misrepresentation. *Id.* at 91. In that case, the Illinois Supreme Court was concerned that allowing such suits would lead to tort law enveloping contract law. *Id.* Nevertheless, the court identified three exceptions to its holding, which is now commonly known as the *Moorman* doctrine: "(1) where the plaintiff sustained personal injury or property damage resulting from a tortious event, *i.e.*, a sudden or dangerous occurrence; (2) where plaintiff's damages are proximately caused by a defendant's intentional, false representation, *i.e.*, fraud; and (3) where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions." *Fireman's Fund Ins. Co. v. SEC Donohue, Inc.*, 176 Ill. 2d 160, 165 (1997) (internal citations omitted); *In re Chicago Flood Litig.*, 176 Ill. 2d 179, 199 (1997); *In re Ill. Bell Switching Station Litig.*, 161 Ill. 2d 233, 240–41 (1994).

Wheaton Theatre does not dispute that it seeks damages only for economic losses. Instead, it argues that the third exception to the *Moorman* doctrine applies here because First American is in the business of supplying information for the guidance of others in their business transactions, "mainly an accurate legal description in concert with the Title Commitment and the Title Policy." (Dkt. 1-2) at ¶ 42. But for a plaintiff to recover economic losses on a negligent misrepresentation claim, the threshold question is whether the party making the statement has a duty to communicate accurate information. *Bd. of Educ. of City of Chicago v. A, C & S, Inc.*, 131 Ill. 2d 428, 452 (1989). The Illinois Supreme Court directly addressed this question in *First Midwest Bank, N.A. v. Stewart Title Guaranty Co.*, holding that "a title insurer is not in the business of supplying information when it issues a title commitment or a policy of title insurance and, accordingly, the negligent misrepresentation exception to the *Moorman* doctrine does not apply." 218 Ill. 2d at 336.

In that case, two individuals began the process of purchasing property in Greek Oaks, Illinois, which they intended to use as their residence and a home business office. *Id.* at 329. They applied for a loan from First Midwest Bank and they obtained a title commitment and title policy from Stewart Title. Neither the commitment or policy indicated that there were any restrictive covenants against the property. *Id.* After taking out a few more loans and getting a title commitment and policy from a different company, the property owners and bank learned that the property was encumbered by a restrictive covenant that prohibited using the property for business or commercial purposes. *Id.* at 330. Ultimately, the borrowers defaulted on their loans. The bank foreclosed and then brought suit against Stewart Title for negligent misrepresentation by way of the title commitment and policy issued, among other things. *Id.*

In analyzing whether the case fell within the "business of supplying information" exception to the *Moorman* doctrine, the Illinois Supreme Court looked closely at the title commitment to

define the parameters of the title insurer's duty. *Id.* at 340. Unlike an abstract of title, which provides information regarding the title after an examination of the record, a title commitment "is simply the promise to insure a particular state of title." *Id.* Accordingly, the court found that "the purpose of the title commitment is to set forth the terms for issuing a policy of title insurance and the purpose of the policy of title insurance is to insure against the risk of undiscovered defects, liens, and encumbrances." *Id.* at 341. In other words, neither product's purpose is to provide information regarding the title. *Id.* at 340–41. ("To the extent that the title commitment contains information concerning the title, such information is provided to give notice of the limitations to the risk that the title insurer is willing to insure.") (citing 1 Am. Jur. 2d *Abstracts of Title* § 2 (2005); 1 M. Keller, *Title Insurance and Other Title Evidence*, in Basic Real Estate Practice (Ill. Inst. For Cont. Legal Educ. 1995))); *see also* 4 Illinois Real Property § 24:4 (2018) ("[U]nder a title insurance policy, there can be no question of a negligent title search, since the issue is merely whether a risk is covered or not.").

With these details ironed out, the Illinois Supreme Court found that the scope of a title insurer's liability in supplying a title commitment or policy of title insurance is "properly defined by contract." *Stewart Title Guaranty Co.*, 218 Ill. 2d at 341. Seeing that the negligent misrepresentation claim in Wheaton Theatre's Complaint similarly is based on a title commitment and title policy, *Stewart Title* squarely applies and the *Mooreman* doctrine prevents it from being able to seek economic losses on the theory set forth in Count III. *See also, e.g., Gondeck v. A Clear Title & Escrow Exch., LLC*, 47 F. Supp. 3d 729, 750 (N.D. Ill. 2014) (finding title insurer was not in the business of supplying information for the guidance of others in their business transactions, and therefore the exception to the economic loss doctrine did not apply); *Gerdes v. John Hancock Mut. Life Ins. Co.*, 712 F. Supp. 692, 700 (N.D. Ill. 1989) (an insurance policy is "a

noninformational product" for purposes of the economic loss doctrine); *cf. NCMIC Ins. Co. v. Para*, 2018 WL 340017, at *2 (C.D. Ill. Jan. 9, 2018) (claim for negligent misrepresentation failed because "like a title insurer, a malpractice insurer is not supplying information when it issues an insurance policy").

But in response to First American's Motion, Wheaton Theatre makes three arguments to distinguish this case from *Stewart Title*. First, Wheaton Theatre argues that it received something more akin to an abstract of title than a title commitment and policy based on the amount it paid for the policy and miscellaneous "title services," the language of the Commercial Sales Contract between Wheaton Theatre and Suburban Bank & Trust, and the degree to which it relied on those documents, thereby raising First American's duty to supply accurate information. (Dkt. 19-1) ¶¶ 11–13. However, this theory is not pled in the Complaint nor is it consistent with the allegations there, which only reference the title commitment and Policy and nothing further. (Dkt. 1-2) at ¶¶ 5, 7, 17, 42–48, 50; *see Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011) ("a plaintiff may not amend [its] complaint in [its] response brief"); *cf. Matthews*, 2015 WL 5876567, at *1 (court can consider additional facts set forth in plaintiff's brief so long as those facts are consistent with the pleadings). In addition, even if it were in the Complaint, the fact that Wheaton Theatre paid for "title services" without more does not allege that First American provided it with an abstract of title or anything more than a commitment and policy. Further, Wheaton Theatre's expectations as to what the title commitment and Policy would provide cannot alter the nature of those documents without additional information indicating that something above and beyond a commitment was bargained for and provided. In other words, Wheaton Theatre cannot simply substitute its subjective beliefs for the objective terms of the title commitment and Policy, which only state the coverage of risk. *See*

(Dkt. 19-1) at Ex. C ("We agree to issue a policy to you according to the terms of this Commitment."); (Dkt. 1-2) at Ex. A (providing insurance against loss or damage sustained by reason of "[t]itle being vested other than as stated in Schedule A," or "[a]ny defect in or lien or encumbrance on the Title," among other things). Therefore, at this time, these arguments do not serve to distinguish this case from *Stewart Title*.

Next, Wheaton Theatre attempts to narrow *Stewart Title*'s holding that a title insurer is not in the business of supplying information to apply to only Schedule B of a title commitment. This is because Wheaton Theatre alleges here that "First American carelessly and negligently made false statements of material facts by tendering to Wheaton Theatre the Title Commitment and Title Policy without identifying the Wheaton Sanitary District liens [in Schedule B], and inaccurately including the Disputed Property in the inaccurate legal description [in Schedule A]." (Dkt 1-2) at ¶ 48. According to Wheaton Theatre, the language in Schedule A, particularly, "[t]he land referenced to in this Commitment is described as follows," raises First American's duty to provide accurate information, placing it within the third exception to the *Moorman* doctrine. Unfortunately, Wheaton Theatre does not substantiate this claim with any legal basis to sever and treat portions of a title commitment differently as a matter of law. To the contrary, *Stewart Title* held that "nowhere does the commitment contain any guarantee concerning the performance of a title search." 218 Ill. 2d at 341. Moreover, Wheaton Theatre's Policy specifically insures against loss or damage if the "[t]itle being vested is different than as stated in Schedule A." (Dkt. 1-2) at Ex. A. Thus, if Wheaton Theatre was provided with an inaccurate legal description of the property, the appropriate recourse is to bring a breach of contract claim, which is contained in Count II and which First American tellingly has not moved to dismiss.

9

Overall, the Complaint alleges only that First American supplied Wheaton Theatre with a title commitment and title policy. Under *Stewart Title*, then, in supplying these documents First American was not in the business of supplying information for the guidance of a business transaction. Instead, it was issuing terms for a title insurance policy and insuring against undiscovered defects, liens, and encumbrances. Accordingly, the contracts define the scope of First American's liability and Count III fails to state a claim for negligent misrepresentation.

As a final matter, Wheaton Theatre argues that Count III is not precluded by *Stewart Title* because First American contemplated liability for a negligent misrepresentation claim in the title commitment based on certain language in the title commitment: "Any claim, whether or not based on negligence, which you may have against us concerning the title to the land must be based on this Commitment and is subject to its terms." (Dkt. 19-1) at Ex. C. But this language simply does not allow the Court to disregard the Illinois Supreme Court's holding in *Stewart Title*.

## **CONCLUSION**

For the reasons outlined above, First American's Motion to Dismiss Count III (Dkt. 16) is granted. Since Wheaton Theatre has attempted to bring additional allegations in support of its claims in its response brief that indicate a possibly different theory of events, the Court will allow Wheaton Theatre the opportunity to file an amended complaint consistent with this opinion, to the extent that it can do so. Any amended complaint shall be filed on or before December 31, 2018.

_____
Hon. Virginia M. Kendall
United States District Judge

Date: December 13, 2018